Michael N. Zundel (#3755) mnz@princeyeates.com
Glenn R. Bronson (#7362) grb@princeyeates.com
**PRINCE, YEATES & GELDZAHLER**
A Professional Corporation
15 West South Temple, Suite 1700
Salt Lake City, Utah 84101
Telephone: (801) 524-1000
Attorneys for Chapter 7 Trustee, Kenneth A. Rushton

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IN RE C.W. MINING COMPANY, doing business as Co-Op Mining Company, <br><br> Debtor. | Case No. 2:11-cv-840 TS |
| KENNETH A. RUSHTON, Trustee, <br><br> Plaintiff - Appellant, <br> v. <br><br> STANDARD INDUSTRIES, INC., ABM, INC., FIDELITY FUNDING COMPANY, SECURITY FUNDING, INC., WORLD ENTERPRISES, a Utah Corporation, WORLD ENTERPRISES, a Nevada Corporation, UTAHAMERICAN ENERGY, INC., C.O.P. COAL DEVELOPMENT COMPANY, HIAWATHA COAL COMPANY, INC., ANR, INC., PAUL KINGSTON, an individual, JOSEPH O. KINGSTON, an individual, CHARLES REYNOLDS, an individual, JOHN DAVID KINGSTON, JR., an individual, RAILCO, INC., A-FAB ENGINEERING, INC., LATTER DAY CHURCH OF CHRIST, also known as Latter Day Church of Jesus Christ, INTERMOUNTAIN POWER AGENCY, COMMONWEALTH COAL SERVICES, INC., NEVADA POWER COMPANY, TENNESSEE VALLEY AUTHORITY, ATTCO TRUCKING COMPANY, INC., doing business as CTC Trucking, CTC | **APPELLANT'S RESPONSE TO NOTICE OF SUBMISSION OF SUPPLEMENTAL AUTHORITY BY COMMONWEALTH COAL SERVICES, INC., TENNESSEE VALLEY AUTHORITY, AND THE INTERMOUNTAIN POWER AGENCY** <br><br> Bankruptcy Case No. 08-20105-RKM (Chapter 7) <br><br> Misc. Adv. Proc. No. 11-08001 <br><br> [Filed Electronically] <br><br> Oral Argument Requested |

| Trucking LLC, MOUNTAIN COIN MACHINE DISTRIBUTORS, NINTH STREET DEVELOPMENT, LLC, NINTH STREET, INC., RACHEL YOUNG, JAMES YOUNG, JESSICA YOUNG, CARL E. KINGSTON, as Trustee under Deed of Trust, COALT, INC., N.W.R. LIMITED PARTNERSHIP, N.U.R., INC., FOUR CORNERS PRECISION MFG. CO., D.U. COMPANY, INC., SMC ELECTRICAL PRODUCTS, INC., BECKER MINING AMERICA, INC., L.A. MILLER, GRAYMONT WESTERN US, INC., AMERICA WEST MARKETING, INC., SECURITY FUNDING COMPANY, NATIONAL BUSINESS MANAGEMENT, INC., doing business as NBM, RUTH BROWN, doing business as NBM, HOUSE OF PUMPS, INC., and TRIMAC TRANSPORTATION CENTRAL, INC.  Defendants - Appellees. | |
|---|---|

On September 25, 2012, the Coal Purchasers filed a Notice of Submission of Supplemental Authority (the "**Notice**") purporting to advise the Court of new, relevant authority occurring since the parties filed their briefs.  The Trustee submits the Notice is inappropriate because it cites no new authority relevant here.[1]  Accordingly, the Notice should not be considered.  If the Court determines to consider the Notice, however, the Trustee respectfully requests that the Court also consider this short Response.

As to the substance of the Notice, although not entirely clear, the Coal Purchasers seem to make two arguments:  First, relying on *Travelers* and *Stern*, they argue that "[t]he Trustee's

---

[1]  Specifically, the Coal Purchasers cite *Stern v. Marshal*, 131 S.Ct. 2594 (2011), which was decided in June 2011, long before the Appellees filed their opposition briefs.  Additionally, the *Rushton v. Bank of Utah* (*In re C.W. Mining Co.*), Opinion, filed September 25, 2012 (10th Cir. B.A.P. 2012), resolved issues on appeal not relevant to this proceeding.

argument that 11 U.S.C. § 541(a)(6) <u>creates</u> property rights peculiar to bankruptcy -- rights

which contravene black-letter property law -- is, as a matter of law, wholly without merit."

(Notice at 1, emphasis added.)  Second, relying on *Bank of Utah*, the Coal Purchasers attack the

Trustee's argument as to the effect of Hiawatha mining and selling the Severed Coal in violation

of the automatic stay.  They argue that "[e]ven if the coal was mined in violation of the stay, <u>title</u>

<u>was not created</u> for the estate."  (Notice at 2, emphases added.)  As set forth in more detail

below, neither argument has merit. The first argument fails because it is a gross overstatement of

the Trustee's position, but it serves to highlight the Coal Purchasers' continuing denial that while

state law generally determines whether a property interest exists when a bankruptcy case begins,

federal law and federal interests may well require that the interest be analyzed differently than

solely under state law -- and that a strict state-law analysis be rejected -- when the state-law

analysis conflicts with those federal interests.  Moreover, federal law (the Bankruptcy Code), not

state law, applies post-petition to protect all assets of the estate.  In short, determining what

constitutes "proceeds, product or profit" of the Debtor's pre-petition "interest[] … in property"

and protecting that interest post petition are federal questions.   The second argument fails

because the Coal Purchasers blatantly mischaracterize the Trustee's position in an effort to avoid

the necessary consequence of Hiawatha violating the automatic stay.  Moreover, the Trustee's

argument here as to the effect of Hiawatha's violations of the automatic stay is wholly consistent

with *Bank of Utah*.

I.      **Once Again, the Coal Purchasers Ignore Numerous Authorities Holding That
        to Determine Property of the Estate Under § 541(a), Once State Law Is
        Determined, Significant Federal Interests May Justify Disregarding a Strict,
        State-Law Analysis.  *Stern v. Marshal* Is Not to the Contrary.**

In its Reply Brief, the Trustee took great pains to set forth the proper characterization of

*Butner v. United States*, 440 U.S. 48 (1979), and dispel the Appellees' argument that the analysis

under § 541(a) (including § 541(a)(6)) begins and ends with state law.  (*See* Section I and VI,

Appellant's Reply.)  The Coal Purchasers' argument here is nothing more than a continuation of

Appellee's argument.  *Butner* held, "[p]roperty interests are created and defined by state law.

Unless some federal interest requires a different result, there is no reason why such interests

should be analyzed differently simply because an interested party is involved in a bankruptcy

proceeding."  440 U.S. at 55.  The only reasonable reading of these two sentences is that while

property interests are generally created and defined by state law, there may be instances where

"[a] federal interest requires a different result," *i.e.*, that the property "interests should be

analyzed differently" than under state law precisely because the party is in bankruptcy.

Appellees continue to argue that federal interests should be ignored and that a § 541(a) analysis

begins and ends with state law.

The issue arises here because the bankruptcy court misinterpreted and misapplied state

law, specifically *Benton v. State of Utah*, to conclude that the Lease did not grant the Debtor any

interest in the coal *in situ* recognizable under § 541(a) or protected by the Bankruptcy Code.  The

Trustee argues that the bankruptcy court misinterpreted *Benton* when it concluded, as a matter of

state law, that *Benton* does not recognize any interest at all of the Debtor in the coal *in situ*

unless, and until, the Debtor removes the coal from the ground.[2]  But it also erred, as a matter of

federal law, when it applied *Benton*, without considering significant federal interests: (i) defining

an interest in property broadly (§ 541(a)) to include all assets of any value within the estate and

---

[2] *Benton* held that a mineral rights lessee does not have a sufficient possessory interest in
the mineral *in situ* to maintain a conversion action.  But the bankruptcy court's conclusion that
*Benton* holds that the lessee has no interest at all in the mineral *in situ* before the lessee removes
it is simply incorrect.  *Benton* expressly recognized that prior to removal of the mineral, the
lessee holds an inchoate interest (an "incorporeal hereditament, a right to quarry and take stone")
in the mineral *in situ*.  706 P.2d at 366.

(ii) protecting all such interests post-petition by imposition of the automatic stay (§362(a)).  It is in this context that the issue of state law versus federal law arises.

In their Notice, the Coal Purchasers cite *Stern v. Marshall* asserting that it cited "*Travelers* for the rule that state law governs property rights in bankruptcy court."  (Notice at 1.) *Stern* did cite *Travelers* for its quotation of *Butner*, but it also included the second part of the *Butner* holding that "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."  More importantly, *Stern* is a jurisdictional case not applicable here.[3]  *Stern* adds nothing to the *Butner* holding or how it should be applied in determining property of the estate under § 541(a).

As to the role and significance of federal interests in that analysis, the authorities the Trustee has cited in his briefs applying *Butner* stand unrebutted.  They conclude that determining what is property of the estate post petition under § 541(a) is ultimately a federal question, requiring the court to look first to state law and then consider the federal interests at issue, which in some instances justify departing from a strict, state-law analysis or characterization of the rights of the holder of such a property interest.  For example:

> [W]hile state law creates legal interests and defines their incidents, 'the ultimate question whether an interest thus created and defined falls within a category stated by a Federal statute, requires an interpretation of that statute which is a Federal question.'

*In re Nejberger*, 934 F.2d 1300, 1302 (3d Cir. 1991).

---

[3] Specifically, *Stern* held that a bankruptcy court, as a non-Article III court, does not have the constitutional authority to enter a final judgment on a state-law counterclaim that did not arise under Title 11.  Here, the Trustee's claims clearly arise under Title 11 and concern federal issues, including the Trustee's claims under §§ 542, 549 and 550, and the breadth of § 541(a) and the protections afforded by § 362(a).

> Debtor's reliance on the objectives of the Code to override state law is at the bottom of the controversy. It raises the troublesome question of when a Bankruptcy Court should depart from the doctrine of *Butner* … by ignoring state law to advance the objectives of the Bankruptcy Code ….

*In re KAR Dev. Assocs.*, 180 B.R. 597, 604 (Bankr. D. Kan. 1994).

> This Court believes that the purposes and objectives of the Bankruptcy Code and Chapter 11 of promoting reorganization furnish a sufficient federal interest in seeing to it that if a workout is possible, all of the creditors of the debtor participate in the reorganization plan. The objectives of the Code in general and § 1129 of Chapter 11 in particular provide an "identifiable federal interest" that justifies overlooking state law in the context of this revenue bond financing transaction.

*Id.* at 618. The purposes of § 541(a)(1) and (a)(6), to include in the estate all assets of any

economic value, and of § 362(a), to protect those assets for creditors, justify rejection of the

bankruptcy court's misreading and misapplication of *Benton*. (*See Section VI,* Appellant's

Reply.)

**II.     The Trustee Has Never Argued That Hiawatha's Actions In Violation of the Stay "Created" Title in the Estate – But Rather That Those Actions Did Not Cut Off the Estate's Interest. The BAP Decision In *Bank of Utah* Is Consistent With the Trustee's Position.**

The Trustee has never argued that because Hiawatha mined the Severed Coal in violation

of the automatic stay, the estate somehow obtained title thereto. The Trustee addressed this

mischaracterization of his position in his Reply Brief. (*See* Section V, Appellant's Reply.) In

short, the Trustee never suggested that Hiawatha's violations of the stay "created" any property

interest for the estate but rather that Haiwatha's violations did not cut off or impair the estate's

existing rights to the coal under the Lease because those actions were "void" as a matter of law.

The effect of being "void" is that Hiawatha's actions could have no adverse effect on the

Debtor's interests nor could they benefit Hiawatha (nor anyone other than the estate).

The Coal Purchasers' argument here seems to be that the BAP's recent rejection of the

Trustee's argument regarding the effect of a creditor's violation of the automatic stay in *Rushton*

*v. Bank of Utah* somehow defeats the Trustee's arguments as to the effect of Hiawatha mining

the Severed Coal in violation of the stay.  Nothing could be further from the truth.  What the

Coal Purchasers really argue is nothing more than a poisoning-of-the-well fallacy -- the Trustee

lost on his automatic-stay argument in *Bank of Utah*, so he should lose here.  The Coal

Purchasers would like this Court to see the *Bank of Utah* opinion as a rebuke of the Trustee

generally.  It is not.  But more importantly, the automatic-stay argument rejected in *Bank of Utah*

is different than the argument the Trustee makes here.  Even a cursory review of the distinct

issues in the two cases reveals the flaw in the Coal Purchasers' suggestion to the contrary.

In *Bank of Utah*, the parties stipulated that the Bank violated the stay when it attempted

to liquidate a CD it held to secure the Debtor's obligations under two Notes owed to the Bank

and then asserted it applied the proceeds of the CD toward those obligations.  The Trustee argued

that as a result of the Bank's stay violation, the Bank's obligation to the estate memorialized by

the CD should be deemed to have remained property of the estate.  And, when the Bank sold its

claims against the estate (the Notes) to a third party, the Bank's lien on the CD was released

because the Bank no longer held claims against the estate for which the CD could stand as

collateral.  The court characterized the issue as "whether the bankruptcy court correctly held that,

even though there was a technical violation of the stay, the remedy sought by the Trustee --

essentially stripping Bank of its lien -- was an impermissible remedy."  (*Bank of Utah* at p. 21.)[4]

Denying the remedy sought by the Trustee (*i.e.*, recognition that the Bank's obligation to the

estate was not extinguished), the court reasoned that "if, as the Trustee suggests, the effect of the

Transfer being avoided was that the CD never left the estate, then the Bank's lien was

correspondingly never extinguished by liquidation and application of the proceeds of the CD to

---

[4] The Trustee disagrees with the court's characterization of the issue, but that analysis is
not essential for purposes of this Response.

the Notes." (*Id.* at 24.)  In support, the court cited *Goldston v. United States (In re Goldston)*,

104 F.3d 1198, 1201 (10th Cir. 1997) for the proposition that "[t]he only effect of violation of

the automatic stay, other than the possibility of contempt, is the unenforceability of any benefit

the creditor obtained as a result of the violation." (Id. at 22.)  And it cited *In re Donovan*, 266

B.R. 862, 871 (Bankr. S.D. Iowa 2001), for the proposition that "[w]here a transfer or transaction

is voided as being in violation of the automatic stay, the proper remedy is to return the parties to

the place each occupied prior to the violation of the stay." (*Id.*)  Returning "both" parties to their

respective positions, the court reasoned, would revive the Bank's lien.

     Here, there is no "lien stripping" at issue.  Indeed, no remedy is at issue at all.  The issue

on the appeal is whether, as a matter of law, the Severed Coal is property of the estate under

§ 541(a)(6) as "proceeds" or "profit" of the Debtor's exclusive right to extract the coal from the

mine.  Contrary to *Goldston*, the Coal Purchasers (and the other Appellees) want to benefit from

Hiawatha having mined and sold the coal in violation of the stay.  Specifically, they want to

ignore that the 1997 Operating Agreement, as the bankruptcy court found previously, granted the

Debtor "the "exclusive rights … to possession of the premises and to mine and remove coal from

the mine premises," that "[t]he Debtor's exclusive rights under the 1997 Operating Agreement to

possession of the mine premises and the mine and remove the coal from the mine premises were

property of the estate", and that "Hiawatha, acting in concert with COP and Standard, [ ]

willfully violated the automatic stay by … mining and removing [the Severed Coal] from the

mine and … purporting to sell and in fact delivering most of that coal to third parties [the Coal

Purchasers]."  They would get there by mischaracterizing the Trustee's argument that he relies

on § 362(a) to "create" an interest that otherwise did not exist.

Section 362(a)'s fundamental purpose is to protect the assets of the estate from the reach of creditors acting outside the provisions of the Code by rendering such creditors' actions "void." The proper view here is that the Debtor held an interest in the coal *in situ* -- "the Debtor's exclusive rights … to possession of the mine premises and to mine and remove the coal" -- and that the Severed Coal is proceeds of those interests.  The bankruptcy court erred when it did not recognize that § 541(a) covers that interest, and it erred when it ruled that *Benton* operates post-petition to defeat § 362(a)'s protections of that interest.  Hiawatha's conduct did not create "title" in the Severed Coal in the Debtor.  More importantly, it did not extinguish the interest the Debtor held.  It did not create any interest in the Severed Coal in Hiawatha, nor did it give Hiawatha any interest it could convey to the Coal Purchasers, which is precisely the benefit the Coal Purchasers seek.

DATED this 24ᵗʰ day of October, 2012.

/s/ Glenn R. Bronson
Michael N. Zundel (mnz@princeyeates.com)
Glenn R. Bronson (grb@princeyeates.com)
Attorneys for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October, 2012, I electronically filed the foregoing **APPELLANT'S RESPONSE TO NOTICE OF SUBMISSION OF SUPPLEMENTAL AUTHORITY BY COMMONWEALTH COAL SERVICES, INC., TENNESSEE VALLEY AUTHORITY, AND THE INTERMOUNTAIN POWE AGENCY** with the Clerk of the Court using the CM/ECF system, which sent a notice of electronic filing to all parties whose names appear on the electronic mail notice list for this case.

I further certify that on the 24th day of October, 2012, I served the foregoing by transmitting a copy of the same, via U.S. Mail, to the following parties:

Gerald H. Suniville
(gsuniville@vancott.com)
Van Cott, Bagley, Cornwall & McCarthy
36 South State Street, Suite 1900
Salt Lake City, UT 84111

Robert H. Scott
(robert.scott@akerman.com)
Akerman Senterfitt, LLP
50 West Broadway, Suite 475
Salt Lake City, UT 84101-2020

F. Mark Hansen (fmhlaw@comcast.net)
431 North 1300 West
Salt Lake City, UT 84116

Kim R. Wilson (krw@scmlaw.com)
David Pinkston (dlp@scmlaw.com)
P. Matthew Cox (mcox@scmlaw.com)
Snow Christensen & Martineau
10 Exchange Place, 11th Floor
Salt Lake City, UT 84111

Peter W. Guyon (pguyon@yahoo.com)
614 Newhouse Bldg.
10 Exchange Place
Salt Lake City, UT 84111

Carl E. Kingston (carlkingston@yahoo.com)
3212 South State
Salt Lake City, UT 84115

David Kingston
(davidekingston@yahoo.com)
3212 South State
Salt Lake City, UT 84115

Mark W. Dykes
(mdykes@parsonsbehle.com)
Parsons Behle & Latimer
201 South Main, Suite 1800
Salt Lake City, UT 84145

Kevin Anderson
(kanderson@fabianlaw.com)
David R. Hague (dhague@fabianlaw.com)
Fabian & Clendenin
215 South State, 12th Floor
Salt Lake City, UT 84151-0210

Edward C. Meade (ecmeade@tva.gov)
Richard E. Riggs (reriggs@tva.gov)
Tennessee Valley Authority
Office of the General Counsel
400 West Summit Hill Drive (WT 6A)
Knoxville, TN 37902

Russell S. Walker (rwalker@wklawpc.com)
Woodbury & Kesler
265 East 100 South
Suite 300
Salt Lake City, UT 84111

George B. Hofmann
(gbh@pkhlawyers.com)
Melyssa D. Davidson
(mdd@pkhlawyers.com)
Parsons Kinghorn & Harris
111 East Broadway, 11th Floor
Salt Lake City, UT 84111

Jeffrey L. Shields (jlshields@cnmlaw.com)
Callister Nebeker & McCullough
Zions Bank Building, Suite 900
10 East South Temple
Salt Lake City, UT 84133

Danny C. Kelly (dckelly@stoel.com)
Stoel Rives LLP
One Utah Center
201 South Main Street, Suite 1100
Salt Lake City, UT 84111

David E. Leta (dleta@swlaw.com)
Douglas P. Farr (dfarr@swlaw.com)
Snell & Wilmer
15 West South Temple, Suite 1200
Salt Lake City, UT 84101-1547

Adelaide Maudsley
(maudsley@chapman.com)
Brandon C. Pond (pond@chapman.com)
Chapman and Cutler LLP
201 South Main Street, Suite 2000
Salt Lake City, UT 84111


/s/ Nancy Williams



g:\grb\rushton\cw mining\11-8001 appeal\response re supplemental authority.docx