IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| IN RE C.W. MINING COMPANY, doing business as Co-Op Mining Company, <br><br> Debtor. | Bankruptcy No. 08-20105 <br> (Chapter 7) |
| KENNETH A. RUSHTON, Trustee, <br><br> Plaintiff/Appellant, <br><br> v. <br><br> STANDARD INDUSTRIES, INC., ABM, INC., FIDELITY FUNDING COMPANY, SECURITY FUNDING, INC., WORLD ENTERPRISES, a Utah Corporation, WORLD ENTERPRISES, a Nevada Corporation, UTAHAMERICAN ENERGY, INC., C.O.P. COAL DEVELOPMENT COMPANY, HIAWATHA COAL COMPANY, INC., ANR, INC., PAUL KINGSTON, an individual, JOSEPH O. KINGSTON, an individual, CHARLES REYNOLDS, an individual, JOHN DAVID KINGSTON, JR., an individual, RAILCO, INC., A-FAB ENGINEERING, INC., LATTER DAY CHURCH OF CHRIST, also known as Latter Day Church of Jesus Christ, INTERMOUNTAIN POWER AGENCY, COMMONWEALTH COAL SERVICES, INC., NEVADA POWER COMPANY, TENNESSEE VALLEY AUTHORITY, ATTCO TRUCKING COMPANY, INC., doing business as CTC Trucking, CTC | MEMORANDUM DECISION AND ORDER ON COMBINED APPEAL <br><br><br> Case No. 2:11-CV-840 TS |

Trucking LLC, MOUNTAIN COIN MACHINE DISTRIBUTORS, NINTH STREET DEVELOPMENT, LLC, NINTH STREET, INC., RACHEL YOUNG, JAMES YOUNG, JESSICA YOUNG, CARL E. KINGSTON, as Trustee under Deed of Trust, COALT, INC., N.W.R. LIMITED PARTNERSHIP, N.U.R., INC., FOUR CORNERS PRECISION MFG. CO., D.U. COMPANY, INC., SMC ELECTRICAL PRODUCTS, INC., BECKER MINING AMERICA, INC., L.A. MILLER, GRAYMONT WESTERN US, INC., AMERICA WEST MARKETING, INC., SECURITY FUNDING COMPANY, NATIONAL BUSINESS MANAGEMENT, INC., doing business as NBM, RUTH BROWN, doing business as NBM, HOUSE OF PUMPS, INC., and TRIMAC TRANSPORTATION CENTRAL, INC.,

Defendants/Appellees,

This matter is before the Court on Kenneth A. Rushton, the Chapter 7 Trustee's (the

"Trustee") Appeal from Bankruptcy Adversary Proceeding No. 11-08001 in Bankruptcy Case

No. 08-20105.  Due to the similarity of facts and issues involved, multiple appeals to this Court

were consolidated into this action.[1]  The Court has considered the briefs and evidence submitted

---

[1]*See* Case Nos. 2:11-CV-842; 2:11-CV-843; 2:11-CV-844; 2:11-CV-845; 2:11-CV-846; 2:11-CV-847; 2:11-CV-848; 2:11-CV-849; 2:11-CV-850; 2:11-CV-851; 2:11-CV-852; 2:11-CV-853; 2:11-CV-854; 2:11-CV-855; 2:11-CV-856; 2:11-CV-857; 2:11-CV-858; 2:11-CV-859; 2:11-CV-860; 2:11-CV-861; 2:11-CV-862; 2:11-CV-863; 2:11-CV-865; 2:11-CV-875; 2:11-CV-876; 2:11-CV-877; 2:11-CV-878; 2:11-CV-879; 2:11-CV-880; 2:11-CV-881; 2:11-CV-882; 2:11-CV-883; 2:11-CV-884; 2:11-CV-885; 2:11-CV-886; 2:11-CV-887; 2:11-CV-889; 2:11-CV-916.

by the parties and, for the reasons provided more fully below, will affirm in part and reverse in

part the bankruptcy court's decision.

## I.  BACKGROUND

This appeal arises out of the involuntary bankruptcy proceeding of C.W. Mining

Company ("CWM").  Prior to entering bankruptcy, CWM was in the business of mining coal.

CWM's primary asset was the Bear Canyon mine, an underground coal mine located in Emery

County, Utah.  On January 8, 2008, three of CWM's creditors filed an involuntary Chapter 11

bankruptcy petition against CWM in the Bankruptcy Court for the District of Utah.  An order for

relief was entered on September 26, 2008.  On November 13, 2008, CWM's Chapter 11

bankruptcy proceeding was converted to a Chapter 7 liquidation proceeding and, on November

19, 2008, the Trustee was appointed.

The Bear Canyon mine is located on property owned in fee by C.O.P. Coal Development

Company ("COP") and land that COP leases from the federal government.  In March of 1997,

COP and CWM entered into a coal operating agreement (the "Operating Agreement") that

granted CWM the exclusive right to mine the Bear Canyon mine.  In June of 2008, CWM entered

into a separate agreement whereby it purported to sell all of its assets, equipment, personal

property and other movable assets, and physical possession of the Bear Canyon mine to Hiawatha

Coal Company ("Hiawatha").  This alleged sale occurred during the "gap period"—after the

filing of the involuntary bankruptcy petition but prior to the entry of the order for relief.  This

sale was subsequently avoided by the bankruptcy court under 11 U.S.C. § 549.

After taking possession of the Bear Canyon mine, Hiawatha severed and removed over

1,019,000 tons of coal (the "Severed Coal"), delivering most of the Severed Coal to third parties

(the "Coal Purchasers").  The Coal Purchasers paid Standard Industries, Inc. for the Severed Coal

they purchased.

The Trustee filed a number of adversary proceedings seeking to recover the Severed Coal

or its value.  On February 22, 2011, the bankruptcy court issued an order consolidating for

hearing those adversary proceedings related to the Severed Coal.  On March 4, 2011, the Coal

Purchasers filed a motion for summary judgment seeking judgment that the Severed Coal was

not property of the CWM bankruptcy estate and had never been property of the estate.  In the

same motion, the Coal Purchasers argued that because the Trustee sought and received certain

relief under 11 U.S.C. §§ 549 and 550 as to the Bear Canyon Mine, he received all relief to

which he was entitled concerning the ownership of the Severed Coal.  On March 4, 2011, the

Trustee also filed a motion for summary judgment seeking a judgment that the Severed Coal was

property of the CWM bankruptcy estate and that his claim was not precluded by the § 550

rulings.

The remaining Appellees subsequently filed motions for summary judgment as to the

same issues or sought to join in the Coal Purchasers' motion.  The Appellees also filed motions

under Federal Rule of Civil Procedure 56(d), seeking to defer any ruling in favor of the Trustee

as to amounts expended by CWM in preparing the Severed Coal for extraction until further

discovery could be conducted on that issue.

On July 29, 2011, the bankruptcy court entered an order granting the Appellees' motions

for summary judgment and finding, as a matter of law, that neither the Severed Coal nor its

proceeds were ever property of CWM.  The bankruptcy court indicated that its "rulings [were]

limited strictly to the Trustee's claim that the Severed Coal and the Severed Coal Proceeds either

were or are property of the Estate, and are not intended to foreclose other claims the Trustee may

have under, or with respect to, the [Operating Agreement] itself."[2]  The bankruptcy court further

clarified that it was not making any findings or holdings as to "whether the Section 550 Rulings,

the doctrine of res judicata, or other preclusion doctrines bar the Trustee's claims that are

unrelated to Severed Coal and Severed Coal Proceeds."[3]  Based on this finding, the bankruptcy

court denied the Appellees' Rule 56(d) motions as moot.

## II.  JURISDICTION

This Court has jurisdiction over the instant appeal under 28 U.S.C. § 158(a) and rules

8001 and 8002 of the Federal Rules of Bankruptcy Procedure.

## III.  STANDARD OF REVIEW

A trial court may properly grant summary judgment when "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."[4]  "When applying

this standard, [the Court] examine[s] the factual record in the light most favorable to the party

opposing summary judgment."[5]  The Court reviews the bankruptcy court's grant of summary

---

[2]Docket No. 31, at 1117–18.

[3]*Id*. at 1118.

[4]Fed. R. Civ. P. 56(a).

[5]*Belhomme v. Widnall*, 127 F.3d 1214, 1216 (10th Cir. 1997) (citing *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1234–35 (10th Cir. 1997)).

judgment de novo.[6]  "This Court must also reach its own conclusions regarding state law legal

issues, without deferring to the bankruptcy court's interpretation of state law."[7]

IV.  DISCUSSION

The Trustee raises twelve issues on appeal.  The majority of these issues address different

aspects of a single question: did the bankruptcy court err in finding as a matter of law that CWM

had no property interest recognizable under 11 U.S.C. § 541(a) in coal mined and removed from

the Bear Canyon mine by Hiawatha during the gap period?

A.      PROPERTY INTEREST

Section 541(a) of the bankruptcy code provides that "[t]he commencement of a case

under . . . this title creates an estate . . . comprised of . . . all legal or equitable interests of the

debtor in property as of the commencement of the case" and "[p]roceeds, product, offspring,

rents, or profits of or from property of the estate."  The bankruptcy code does not define

"interests of the debtor in property."  Instead, "Congress has generally left the determination of

property rights in the assets of a bankrupt's estate to state law."[8]  Thus, courts look first to state

law to determine the nature and extent of the rights a debtor such as CWM held at the

commencement of the bankruptcy case.  "Once that state law determination is made," the Court

---

[6]*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1201 (10th Cir. 2007) (internal citation omitted).

[7]*Redmond v. Lentz & Clark, P.A. (In re Wagers)*, 514 F.3d 1021, 1024 (10th Cir. 2007) (per curiam) (citing *Hofer v. Unum Life Ins. Co. of Am.*, 441 F.3d 872, 875 (10th Cir. 2006); *Kelaidis v. Cmty. First Nat'l Bank (In re Kelaidis)*, 276 B.R. 266, 270 n.1 (10th Cir. BAP 2002); *In re Thompson*, 240 B.R. 776, 779 (10th Cir. BAP 1999)).

[8]*Butner v. United States*, 440 U.S. 48, 54 (1979) (internal citations omitted).

6

looks "'to federal bankruptcy law to resolve the extent to which that interest is property of the estate' under § 541."[9]

In beginning its analysis, the Court first considers the nature and extent of CWM's rights in the Severed Coal at the time the involuntary bankruptcy petition was filed. At that point in time, the Severed Coal was still non-severed coal located in the coal seam of the Bear Canyon mine. The Trustee has submitted evidence that CWM had undertaken efforts to begin the process of removing the coal by creating a coal panel using the longwall mining method. The Appellees object to this evidence and request the opportunity to perform additional discovery as to actions taken by CWM in preparation to remove the Severed Coal. It is undisputed, however, that the Severed Coal had not been severed from the coal seam at the time the involuntary petition was filed. Thus, the question is what interest CWM had in the coal in situ, i.e., in its non-severed state.

The bankruptcy court correctly held that the Utah case most on point is *Benton v. State of Utah*.[10] In that case, a holder of a state mineral lease sought to recover under theories of conversion and trover against a holder of a federal mining lease for wrongful removal of stone from leased premises. The *Benton* court noted that "[e]ssential to the doctrine of conversion is that the plaintiff have title or possession of the item allegedly converted."[11] And that further, "'*the right to maintain the action may not be based upon a right to possession at a future*

---

[9]*In re Dittmar*, 618 F.3d 1199, 1204 (10th Cir. 2010) (quoting *Parks v. FIA Card Servs., N.A.*, 550 F.3d 1251, 1255 (10th Cir. 2008)).

[10]709 P.2d 362 (Utah 1985).

[11]*Id*. at 365.

*time.*'"[12]  In *Benton*, the relevant term of the plaintiff's lease provided "the exclusive right and privilege to mine, remove, and dispose of all of the said [stone], in, upon or under the . . . tract of land . . . together with the right to use and occupy so much of the surface of said land as may be required for all purposes reasonably incident to the mining, removal, and disposal of [stone]."[13]

The *Benton* court compared this lease provision to equivalent lease provisions considered by other courts, and agreed with the reasoning of those courts that found such provisions

> to "not transfer the land, but [to give the lessees] an incorporeal hereditament, a right to quarry and take stone from the area involved.  This stone [becomes] the property of [the lessees] only upon its actual severance.  There can be no property in rock, and the title thereto cannot be divested or acquired until it has been taken from the earth."[14]

Thus, according to *Benton*, such lease provisions provide "the lessees possession of the stone they had quarried and removed within the terms of the lease, 'but what they did not quarry out and sever from land remained the property of the owner of the fee.'"[15]  Because the *Benton* court concluded that plaintiff had no possessory rights in the stone, it held that the plaintiff did not have rights sufficient to maintain a cause of action for conversion.[16]

The bankruptcy court found that, similar to the lease provision in *Benton*, the Operating Agreement granted CWM only a profit à prendre.  In other words, the Operating Agreement

---

[12]*Id*. (quoting *Johnson v. Flowers*, 228 P.2d 406, 407 (Utah 1951)).

[13]*Id*. at 366.

[14]*Id*. (alterations in original) (quoting *Jones Cut Stone Co. v. New York*, 166 N.Y.S.2d 742, 746 (N.Y. 1957)).

[15]*Id*. (quoting *Baker v. Hart*, 25 N.E. 948, 948 (N.Y. 1890)).

[16]*Id*.

granted CWM only a contractual right to mine coal on COP's property in fee and federal land

leases.  Based on this finding, the bankruptcy court held that the "Operating Agreement granted

[CWM] no title to coal in situ, and granted [CWM] title to coal only that [CWM] itself actually

severed."[17]

The Court finds that the bankruptcy court properly applied Utah law in reaching the

conclusion that CWM held no title to the coal in situ.  The Trustee's arguments to the contrary

are unavailing.  The Trustee asserts that the Operating Agreement did not provide a profit à

prendre, but rather an exclusive or "true lease" of COP's properties.  This argument is not

supported by the language of the Operating Agreement.  That agreement provides in relevant part

that CWM

> shall have the exclusive right to, and use of the described property for purposes
> reasonably incident to the mining and removal of coal, including any existing
> underground workshops or facilities heretofore placed in or upon the leased area.
> [CWM] shall also have unrestricted use of all access roads leading to and from the
> described property.[18]

This language is substantially similar to that found in the lease provision at issue in *Benton*, and

fits squarely within the definition of a profit à prendre, which is "[a] right or privilege to go on

another's land and take away something of value from its soil or from the products of its soil (as

by mining, logging, or hunting)."[19]

That being said, a finding that CWM did not have title to the coal in situ is not

determinative of the issue of whether CWM had any property interest in the Severed Coal for

---

[17]Docket No. 31, at 1116.

[18]*Id*. at 118.

[19]*Black's Law Dictionary* 1227 (7th ed. 1999).

purposes of § 541(a) at the time the bankruptcy petition was filed.  The bankruptcy court

recognized in its decision that "[t]he property of the [bankruptcy estate] was [CWM's]

contractual right to mine coal under the [Operating Agreement]" and that, under *Benton*, that

contractual right gives "the holder 'an incorporeal hereditament, a right to quarry and take stone

from the area involved.'"[20]  An issue not addressed by the bankruptcy court is whether such an

"incorporeal hereditament" is a property interest under § 541(a).

　　　An incorporeal hereditament is "[a]n intangible right in land, such as an easement."[21]  In

other contexts, Utah courts have recognized an incorporeal hereditament as an interest in real

property.[22]  In addressing a case involving a license to prospect and mine ore, the Utah Supreme

Court discussed the potential for a mining license to ripen into an incorporeal hereditament and

stated:

> This is not to say that a license is an incorporeal hereditament; it means that the
> grant was a license as long as it remained executory because it was not in proper
> form for a conveyance of an incorporeal hereditament.  It ripened into an
> incorporeal hereditament when the licensee entered into enjoyment thereof and
> made expenditures and improvements.  Other jurisdictions hold that revocation
> will not be allowed in such a case unless the licensee be compensated for his
> improvements.[23]

---

[20]Docket No. 31, at 1115 (quoting *Benton*, 709 P.2d at 366).

[21]*Black's Law Dictionary*, at 731.

[22]*See In re Bear River Drainage Area*, 271 P.2d 846, 848 (1954) (stating that rights to the use of water have been characterized by Utah courts as an incorporeal hereditament and therefore as an interest in real property).

[23]*Kennedy v. Combined Metals Reduction Co.*, 51 P.2d 1064, 1068 (1935) (internal quotation marks and citation omitted).

This language supports a conclusion that the holder of an incorporeal hereditament would be considered the holder of a form of property interest entitling it to compensation under Utah law.

This conclusion is supported by the express language of *Benton*. As indicated previously, the court in *Benton* quoted approvingly the following language from *Jones Cut Stone Co. v. New York*:

> Equivalent lease provisions have been interpreted to "not transfer the land, but [to give the lessees] an incorporeal hereditament, a right to quarry and take stone from the area involved. This stone [becomes] the property of [the lessees] only upon its actual severance. There can be no property in rock, and the title thereto cannot be divested or acquired until it has been taken from the earth."[24]

Appellees focus on the latter part of this quote in support of the assertion that there can be no title to the Severed Coal until it is actually severed and removed from the earth. The first line, however, supports the argument that CWM held an intangible property interest in the coal, namely an incorporeal hereditament.

The facts of *Jones Cut Stone* provide further support for this argument. In that case, a lessee on a mineral lease brought suit against the State of New York (the "State") to recover damages for the appropriation of an easement over quarry lands leased from the Onondaga Indian Reservation. The State and the lessee had competing interests on the Onondaga lands. Similar to CWM, the lessee had the exclusive right to mine and remove minerals from Onondaga lands. The State, on the other hand, held an easement right over Onondaga lands to maintain a highway. The State decided to take action to alter and reconstruct its highway through Onondaga lands. As part of this process, the State expanded its right of way. The lessee brought suit to recover,

---

[24]*Benton*, 709 P.2d at 366 (alterations in original) (quoting *Jones Cut Stone*, 166 N.Y.S.2d at 746).

among other amounts, "damages caused by its inability to quarry the stone . . . due to its proximity to the newly constructed highway and service road connected therewith."[25]

The New York Court of Appeals concluded, as quoted above, that the lessee held only an incorporeal hereditament, a right to quarry and take stone from the area involved.  This led the court to hold that "[t]he material quarried and removed by claimant during the term of its lease belonged to it, but what it did not quarry out and sever from the land remained the property of the owner of the fee."[26]  Nevertheless, the court stated that

> the claimant's incorporeal hereditament was infringed upon by the State extending in width its original right-of-way so as to prevent claimant from cutting, quarrying and removing a small segment of stone should the necessity require it.  This right, easement or incorporeal hereditament is a property right for which claimant is entitled to compensation for such damage as it in fact sustained.[27]

The court went on to award the lessee nominal damages because the lessee failed to meet its burden of proof as to the damages it suffered as a result of the State's infringing actions.[28]

In this case, the Trustee has come forward with evidence demonstrating that CWM expended over $14 million in preparing to extract the Severed Coal.  Further, it is undisputed that the coal removed by Hiawatha was the coal that was most readily extractable from the Bear Canyon mine.  While the parties may dispute the extent to which the coal was prepared for extraction or the source of the funds used to prepare the Severed Coal for extraction, they do not appear to dispute that actions were taken by CWM to prepare the severed coal for extraction.

---

[25]*Jones Cut Stone*, 166 N.Y.S.2d at 744.

[26]*Id*. at 746.

[27]*Id*. at 746–47.

[28]*Id*. at 748.

Thus, the Trustee has provided sufficient evidence at this stage of the proceeding to demonstrate that the bankruptcy estate suffered damages as a result of the removal of the Severed Coal. Under the reasoning of *Jones Cut Stone*, these damages are the result of the infringement of CWM's incorporeal hereditament, "a property right for which claimant is entitled to compensation for such damage as it in fact sustained."[29]

In light of the foregoing, the Court finds that prior to the filing of the bankruptcy petition and the removal of the Severed Coal, CWM held, under Utah law, an incorporeal hereditament or intangible property interest in the Severed Coal.

The question that remains is whether such right would be recognized under § 541 and federal law. "Under federal law, the bankruptcy estate includes, with enumerated exceptions, 'all legal or equitable interests of the debtor in property as of the commencement of the case.'"[30]  The Tenth Circuit has held that "the scope of § 541 is broad and should be generously construed, and that an interest may be property of the estate even if it is 'novel or contingent.'"[31]  Particularly on point here, the Tenth Circuit has quoted approvingly language from another circuit holding: "When a bankruptcy petition is filed, virtually all property of the debtor at that time becomes property of estate . . . . [E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of 11 U.S.C. § 541.'"[32]

---

[29]*Id.* at 747.

[30]*In re Dittmar*, 618 F.3d at 1207 (quoting 11 U.S.C. § 541(a)(1)).

[31]*Id*. (quoting *Parks*, 550 F.3d at 1255).

[32]*Id.* (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993)).

The property interest CWM held in the Severed Coal at the time the bankruptcy petition was filed was an incorporeal hereditament, or, in other words, a future right to possession. While such a property right is insufficient to maintain a claim for conversion or trover, as demonstrated in *Benton*, it does not necessarily follow that such a right would not be recognized by § 541. As expressed above, § 541 covers every conceivable interest of the debtor, including future, nonpossessory, and contingent interests. Given this broad reach, the Court finds that CWM's incorporeal hereditament is a property interest recognized by § 541.

B.      REMAINING ARGUMENTS

The Trustee argued before the bankruptcy court and contends on appeal that the Severed Coal should be considered property of the bankruptcy estate, or at the very least, a proceed, product, or profit of property of the bankruptcy estate because: (1) CWM and not Hiawatha held the permits to mine the Bear Canyon mine during the period in question; (2) CWM expended money and prepared the Severed Coal for extraction; (3) the bankruptcy estate is contractually obligated to pay the royalties owed on the Severed Coal; (4) CWM's sale of the Bear Canyon mine to Hiawatha was made in violation of the automatic stay; and (5) for equitable reasons the Severed Coal should be found to be property of the estate.[33]

The bankruptcy court expressly declined to reach these claims. According to the bankruptcy court, it did "not resolve these issues because they [were] immaterial to the issue of the Debtor's and Estate's lack of title to the Severed Coal and Severed Coal Proceeds."[34] And because, "even if the Trustee's assertions are true, they do not effect a transfer of title to the coal

---

[33]*See* Docket No. 31, at 1116.

[34]*Id*. at 1117.

14

in situ, the Severed Coal or its proceeds."[35]  The Court is persuaded that, under *Benton*, the

bankruptcy court properly found that the Trustee's arguments have no effect on the title, or

transfer of title, to the coal in situ.  However, in light of this Court's finding above—that CWM

held a property interest for purposes of § 541 in the coal in situ—the Court will remand these

issues to the bankruptcy court for a determination on the merits.

The Court will also remand this case to the bankruptcy court for a determination as to

how this Court's analysis may impact its finding that the parties' preclusion arguments under §§

549 and 550 are moot.

## V.  CONCLUSION

Based on the foregoing,  it is hereby

ORDERED that the judgment of the bankruptcy court is AFFIRMED except as to its

determination that CWM, at the time of filing of the involuntary petition, held no property

interest in the coal in situ for purposes of § 541.  The case is REMANDED for further

proceedings consistent with this Order.  The Clerk of the Court is instructed to close this case

forthwith.

DATED  March 25, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[35]*Id.*